UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NORTHWELL HEALTH INC., IN ITS
CAPACITY AS PLAN
ADMINISTRATOR FOR THE
NORTHWELL HEALTH FLEX
BENEFITS PLAN,

        Plaintiff,

-against-

LUZVISMINDA LAMIS and A. PAUL
BOGATY, ESQ.,

        Defendants.

---------------------------------------------------------------

18cv1178

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Northwell Health Inc. ("Northwell"), in its capacity as Plan Administrator for the Northwell Health Flex Benefits Plan (the "Northwell Plan" or the "Plan"), brings this action under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), against Defendants Luzvisminda Lamis and A. Paul Bogaty, Esq. (collectively, "Defendants"). Northwell seeks the imposition of an equitable lien by agreement or a constructive trust over medical expenses paid by the Northwell Plan to treat certain of Lamis's injuries. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. For the following reasons, the motion is denied.

## BACKGROUND

        On March 23, 2015, Lamis was injured while undergoing gallbladder surgery at Northwell's Forest Hills Hospital division. (Pl.'s Resp. to Defs.' Statement of Undisputed

Material Facts and Additional Undisputed Material Facts, ECF No. 28 ("Pl.'s 56.1"), ¶¶ 2–3.) Lamis also worked at Forest Hills Hospital and was a participant in the Northwell Plan.[1] (Pl.'s 56.1 ¶ 2.) As a result, the Northwell Plan partially covered the medical expenses Lamis incurred in treating her iatrogenic injury. (Pl.'s 56.1 ¶ 4.) Those expenses totaled $79,055.50 (the "Funds"). (Pl.'s 56.1 ¶ 4.)

On December 9, 2015, Lamis filed a medical malpractice action in New York Supreme Court against Forest Hills Hospital and two of its employees, Michael S. Drew, M.D. and Martin Yu, P.A. (the "State Action"). (See Pl.'s 56.1 ¶ 5.) She was represented by Bogaty. (See Pl.'s 56.1 ¶ 5.) In August 2017, the State Action settled for $650,000 via a general release and an accompanying hold harmless agreement. (Pl.'s 56.1 ¶ 6.) The general release and hold harmless agreement named Northwell as a party, along with—among others—Physicians' Reciprocal Insurers, Forest Hills Hospital, and Drew. (See Affirmation of Counsel in Supp. of Mot. for Dismissal on the Pleadings or in the Alternative for Summ. J., ECF No. 19 ("Pl.'s Aff."), Exs. B, C.)

While the State Action was still ongoing, the Northwell Plan's subrogation agent, Optum, provided Bogaty with a ledger of medical expenses that the Plan paid on Lamis's behalf in treating her injury, as well as a copy of the Plan's "Plan Document (PD)/Summary Plan Description (SPD)" (the "PD/SPD"). (Pl.'s 56.1 ¶ 7–8.) Section 10 of the PD/SPD states in relevant part:

> [I]f a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, <u>you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.</u>

---

[1] At the time of her injury, the Northwell Plan was known as the "North Shore-LIJ Health System Flex Benefits Plan." (Affirmation of Counsel in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 27 ("Pl.'s Opp. Aff."), Ex. 1 ("Nevola Affidavit"), ¶ 6.)

The following persons and entities are considered third parties:

> a person or entity alleged to have caused you to suffer a Sickness, Injury or damages, or who is legally responsible for the Sickness, Injury or damages;
>
> any insurer or other indemnifier of any person or entity alleged to have caused or who caused the Sickness, Injury or damages;
>
> North Shore-LIJ Health System in workers' compensation cases; or
>
> any person or entity who is or may be obligated to provide you with benefits or payments under:
>
>> underinsured or uninsured motorist insurance;
>>
>> medical provisions of no-fault or traditional insurance (auto, homeowners or otherwise);
>>
>> workers' compensation coverage; or
>>
>> any other insurance carrier or third party administrator.

(Pl.'s Aff., Ex. E (the "PD/SPD"), at 88 (emphasis added).) Northwell contends that under § 10, the Plan is entitled to reimbursement of the Funds from Lamis's State Action settlement. (See Pl.'s 56.1 ¶¶ 8–9.) To date, however, Defendants have refused to reimburse the Plan. (Pl.'s 56.1 ¶ 9.)

## DISCUSSION

I. Legal Standard

A motion to dismiss "must be treated as one for summary judgment" when "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). "[A] court may convert a motion to dismiss into a motion for summary judgment, and . . . consider . . . external exhibits and affidavits, when it is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." Access 4 All, Inc. v. Trump Int'l Hotel and

3

Tower Condo., 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) (quotation marks omitted). Thus, "[t]he essential inquiry is whether the [non-movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985); see also Ferguson v. Jones, 2011 WL 4344434 at *2 (S.D.N.Y. Sept. 12, 2011) (same). "A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." In re G. & A. Books, Inc., 770 F.2d at 295; see also Bruno v. City of New York, 2019 WL 690340, at *2 (S.D.N.Y. Feb. 19, 2019) (converting defendants' motion to dismiss into motion for summary judgment where "[d]efendants' moving papers provide[d] notice that [d]efendants [were] moving for, in the alternative, summary judgment pursuant to Rule 56" and where "[p]laintiff ha[d] filed his own Rule 56.1 [statement] and supplemented the record with his own exhibits" (quotation marks omitted)). Here, Northwell responded to Defendants' statement of undisputed material facts, appended its own additional statement of undisputed facts, and filed accompanying affidavits and exhibits. Accordingly, this Court treats Defendants' motion as one for summary judgment.

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015) (quotation marks omitted). This Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); Upadhyay v. Sethi, 848 F. Supp. 2d 439, 446 (S.D.N.Y. 2012) (denying summary judgment where court would have had to weigh the credibility of dueling affidavits).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the moving party meets its burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 249 (citation and quotation marks omitted); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

II. Equitable Relief Under ERISA

Under ERISA, "a participant, beneficiary, or fiduciary" is entitled to "obtain . . . appropriate equitable relief" to redress violations of or to enforce the terms of an employee benefits plan. 29 U.S.C. § 1132(a)(3); Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002). This "provision . . . authorizes the kinds of relief typically available in equity in the days of the divided bench, before law and equity merged." US Airways, Inc. v. McCutchen, 569 U.S. 88, 94–95 (2013) (quotation marks omitted). The Supreme Court has recognized that a claim to enforce a plan's reimbursement clause "[is] the modern-day equivalent

of an action in equity to enforce a contract-based lien—called an equitable lien by agreement." McCutchen, 569 U.S. at 95 (quotation marks omitted). "[A]ll types of equitable liens must be enforced against a specifically identified fund in the defendant's possession." Montanile v. Bd. of Tr. of Nat'l Elevator Indus. Health Benefit Plan, 136 S. Ct. 651, 659 (2016) (emphasis removed); see also Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan, 911 F. Supp. 2d 243, 255 (S.D.N.Y. 2012) ("[A] necessary characteristic of equitable restitution is that it impose a constructive trust or equitable lien on particular funds or property in the defendant's possession." (quotation marks omitted)).

Northwell contends that it is entitled to enforcement of an equitable lien by agreement on the Funds because § 10 of the PD/SPD straightforwardly requires Plan beneficiaries to "use [their settlement] proceeds to fully return to the Plan 100% of any Benefits . . . received for th[e] Sickness or Injury" from "any third party." (PD/SPD, at 88.) Here, Northwell argues that the requisite "third party" is any of Northwell, Physicians' Reciprocal Insurers, Forest Hills Hospital, Drew, or Yu. (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative for Summ. J., ECF No. 26 ("Pl. Opp."), at 14.) Moreover, according to Northwell, the Funds are "specifically identif[able]," Montanile, 136 S. Ct. at 659, since they are derived from the State Action settlement and are currently held in escrow by Bogaty. (See Pl. 56.1 § 9.) Defendants argue that summary judgment should be granted because: (1) Northwell's claim is barred by the "unclean hands" doctrine, (2) the PD/SPD is unenforceable under ERISA, and (3) even assuming the PD/SPD is enforceable, the Northwell Plan is not entitled to reimbursement because Northwell is not a "third party" under § 10 of the PD/SPD.

6

A. Unclean Hands

First, Defendants argue that the instant action is barred by the equitable doctrine of "commodum ex injuria sua nemo habere debet." (Mem. of Law in Supp. of Defs.' Mot. for Dismissal on the Pleadings or in the Alternative for Summ. J., ECF No. 20 ("Defs.' MOL"), at 6–8.) This maxim is an iteration of the "unclean hands" doctrine, under which "[a] court may decline to exercise its equitable powers in favor of a party whose 'unconscionable act . . . has immediate and necessary relation to the matter that he seeks in respect of the matter in litigation.'" Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969, 969 (S.D.N.Y. 1992) (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933)); see also PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004) ("[T]he equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage." (quotation marks omitted)). "Application of the . . . doctrine rests with the discretion of the court, which is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Aris-Isotoner Gloves, Inc., 792 F. Supp. at 969–70 (quotation marks omitted).

Defendants argue that the unclean hands doctrine applies because Northwell seeks to use § 10 of the PD/SPD to recover money for an injury that Northwell and its agents caused, and Northwell could have—but did not—assert its reimbursement claim as a counterclaim in the State Action. (Defs.' MOL, at 8–9.) However, application of the unclean hands doctrine in this action would contravene the Supreme Court's decision in McCutchen. There, the Court refused to apply equitable defenses rooted in unjust enrichment to override the express provisions of an ERISA plan. As the Court explained, "if the agreement governs, the agreement governs," and while the proffered equitable defenses "ha[d] deep roots in equity," "[e]ven in equity, when a

7

party sought to enforce a lien by agreement, all provisions of that agreement controlled."
McCutchen, 569 U.S. at 99–100. "[E]nforcing [an equitable lien by agreement] means holding the parties to their mutual promises . . . . [and] it means declining to apply rules—even if they would be 'equitable' in a contract's absence—at odds with the parties' expressed commitments." McCutchen, 569 U.S. at 98 (citation omitted). Stated differently, it is "[t]he agreement itself [that] becomes the measure of the parties' equities." McCutchen, 569 U.S. at 100. The Court's conclusion "fits lock and key with ERISA's focus on what a plan provides" because precluding "equitable defenses from overriding" the plan's terms helps to keep the "plan . . . at the center of ERISA." McCutchen, 569 U.S. at 100–01.

Although McCutchen "addressed . . . a subset of equitable defenses . . . within the unjust-enrichment genus . . . the Supreme Court's reasoning sweeps more broadly to include all equitable defenses." Quest Diagnostics v. Bomani, 2013 WL 3148651, at *5 (D. Conn. June 19, 2013); see Cognetta v. Bonavita, 330 F. Supp. 3d 797, 811 (E.D.N.Y. 2018) ("As the Supreme Court made clear . . . equitable defenses, such as the make-whole rule, give way when a court enforces an equitable lien by agreement that repudiates the defense." (citation and quotation marks omitted)). Specifically, the "unclean hands [doctrine] appears precluded by the core logic" of McCutchen because the doctrine "runs counter to [the] central purpose of [ERISA] to protect contractually defined benefits." Quest Diagnostics, 2013 WL 3148651, at *5–6 (quotation marks omitted). And here, § 10 explicitly requires that beneficiaries reimburse the Plan for injuries caused by a third party. This Court fails to see where the equitable defense of unclean hands fits within that section.

Moreover, even if the unclean hands doctrine were available to Defendants, they do not point to any wrongdoing by the Plan, and they concede that their argument hinges on a

8

finding that "Northwell and [the Plan] are the same entity for all practical purposes of this case." (Reply Mem. of Law in Supp. of Defs.' Mot. for Dismissal on the Pleadings or in the Alternative for Summ. J., ECF No. 34 ("Defs.' Reply"), at 9.) Defendants aver that Northwell and the Plan are one and the same, and because Northwell is a named party in the State Action general release, this lawsuit is an improper attempt by Northwell to profit from its own negligence. (Defs.' Reply, at 10.)

Defendants insist that Northwell and the Plan are the same entity for purposes of this action because the Plan's funds are allegedly derived solely from the general assets of Northwell and also because the PD/SPD identifies Northwell as the Plan's Sponsor and Administrator. (Defs.' Reply, at 9.) Yet Defendants do not explain why these contentions necessitate a finding that the Plan and Northwell are legally the same. Indeed, as Northwell observes, at least one court—albeit outside this circuit—has concluded in an analogous scenario that a plan and the sponsoring employer are legally distinct. See Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard, 393 F.3d 1119, 1126 (10th Cir. 2004) ("Although [defendant] points to many facts showing a close relationship between the Plan Administrators and Wal-Mart, including control and oversight by the company, [he] fails to establish that the two are not distinct entities for purposes of ERISA." (emphasis added)).[2] Moreover, the facts that Defendants offer to show that Northwell and the Plan are one entity are far from settled. On its face, the PD/SPD states that the Plan is self-funded through contributions from both Northwell's "[e]mployees and [the] [h]ealth [s]ystem." (PD/SPD, at 225; see also PD/SPD, at 5

---

[2] Defendants attempt to distinguish the Tenth Circuit's decision in Willard on grounds that, there, plan assets were held in a separate trust that was overseen by a board of trustees. But that argument is unavailing. Indeed, in Willard, even though "[t]he Trust [held] the Plan assets . . . [and] maintain[ed] those assets separate from Wal-Mart," the "Board of Trustees . . . consist[ed] of two members appointed by the Wal-Mart Board of Directors," and Wal-Mart retained "indirect control over the Plan." Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard, 302 F. Supp. 2d 1267, 1270 (D. Kan. 2004).

9

("You and [Northwell] share in the cost of the Plan."))  Additionally, while Northwell is the Plan's Sponsor and Administrator, Northwell claims that the Plan's subrogation and reimbursement funds are deposited into a bank account <u>maintained by United Healthcare</u>—one of the Plan's Claims Administrators—for the purpose of paying for participants' medical benefits.  (Nevola Aff. ¶ 12.)  Accordingly, this Court refuses to grant summary judgment to Defendants on the basis of unclean hands.

### B.  PD/SPD

Next, Defendants argue that the PD/SPD is unenforceable as a matter of law because it does not satisfy the requirements of ERISA §§ 402 and 502.  As previously stated, § 502(a)(3) enables a plan fiduciary to "obtain . . . appropriate relief . . . to enforce . . . the terms of the plan."  29 U.S.C. § 1132(a)(3).  Defendants observe that, in <u>Cigna Corporation v. Amara</u>, 563 U.S. 421, 437 (2011), the Supreme Court concluded that the "terms of the plan" enforceable under § 502(a)(3) are found within the "written instrument" by which the plan is established and maintained under ERISA § 402.[3]  The plan document serves a different purpose than statutorily-required "summary plan descriptions," which are intended to "provide communication with beneficiaries <u>about</u> the plan, but . . . do not . . . constitute the <u>terms</u> of the plan."  <u>Amara</u>, 563 U.S. at 438 (emphasis in original).  Given the distinct purposes of these two documents, Defendants claim it is "at best questionable whether they can be constituted as the same instrument" via the Northwell Plan's PD/SPD.  (Defs.' MOL, at 12–13.)  Defendants, however, cite no authority for that proposition.  And, as Northwell observes, Defendants' argument is belied by the collection of post-<u>Amara</u> "courts [who] have blessed the practice" of "[p]lan sponsors . . . us[ing] a single document" to "function[] as both an SPD and a written instrument."

---

[3]  Both parties refer to the "written instrument" that establishes and maintains the plan as the "plan document."  This Court adopts that terminology.

10

Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan, 858 F.3d 340, 344 & n.3 (5th Cir. 2017) (collecting cases); see also, e.g., Wise v. Plan Adm'r, IBM Ben. Plan for Ret. Emps., 2014 WL 3849975, at *4 (D. Conn. Aug. 15, 2014) ("[S]everal courts have since held that a SPD can constitute a formal plan document, consistent with the holding of Amara, so long as no other contradictory plan document exists."); cf. Sigal v. Metro. Life Ins. Co., 2018 WL 1229845, at *7 (S.D.N.Y. Mar. 5, 2018) ("It may very well be true, as all of the cases cited by Defendant indicate, that 'an SPD can function as a written [plan] instrument in the absence of a separate written instrument.'" (alteration in original) (quoting Rhea, 858 F.3d at 344–45 & n.3)).

Nevertheless, Defendants—like the defendants in Rhea—contend that the PD/SPD cannot be a plan document because it does not contain the information required by § 402. Rhea, 858 F.3d at 345 ("Rhea claims that the SPD does not comply with § 1102(b) because it does not go into enough depth about how the Plan is funded or how it can be amended.") Specifically, § 402 requires that an ERISA plan: (1) be "established and maintained pursuant to a written instrument"; (2) "provide for one or more named fiduciaries . . . [with the] authority to control and manage the operation and administration of the plan"; (3) "provide a procedure for establishing and carrying out a funding policy"; (4) "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan"; (5) "provide a procedure for amending [the] plan, and for identifying the persons who have authority to amend the plan"; and (6) "specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(a)–(b).

The PD/SPD meets these requirements. Northwell posits that the PD/SPD is the "written instrument by which the [P]lan was established and maintained."[4] (Nevola Aff. ¶ 10.)

---

[4] Defendants dispute whether the PD/SPD is, in fact, the document by which the Plan was established and maintained, and they have stated that they will seek discovery to determine the veracity of Northwell's assertion.

11

That position is at least partially supported by the plain language of the PD/SPD, which states that it is "designed to meet your information needs and the disclosure requirements of [ERISA], and that "[i]f there is a conflict between th[e] PD/SPD and any benefit summaries . . . th[e] PD/SPD will control." (PD/SPD, at 1–2.) Moreover, as Northwell notes in its opposition papers, the PD/SPD: (1) explains that the "people who operate [the] Plan" are its "fiduciaries," (PD/SPD, at 226); (2) identifies Northwell as the Plan Sponsor and Plan Administrator, (PD/SPD, at 224); (3) tasks the Claims Administrators—who are specified in § 20—with "handl[ing] the day-to-day administration of the Plan's coverage as directed by the Plan Administrator," (PD/SPD, at 224); and (4) states that the Claims Administrators "have the fiduciary responsibility for determining whether [participants] are entitled to benefits," (PD/SPD, at 190). Additionally, the PD/SPD provides that the "[s]ource of Plan [c]ontributions" is both the "[e]mployee and [the] Health System" and contains details about employee contributions. (PD/SPD, at 225; see also PD/SPD, at 5 ("You and [Northwell] share in the cost of the Plan.")) Finally, the PD/SPD reserves Northwell's right to "to modify, change, revise, amend or terminate the Plan at any time," (PD/SPD, at 1), and states that such amendments "are effective only when distributed by the Plan Sponsor or the Plan Administrator," (PD/SPD, at 105).

While Defendants contend that these provisions are "general and rather vague," (Defs.' Reply, at 16), "ERISA does not require written instruments to set forth complex procedures." Rhea, 858 F.3d at 346 (rejecting argument that plan did not comply with § 402 "because it [did] not go into enough depth about how the [p]lan is funded or how it can be amended"); cf. Curtiss-Wright Corp v. Schoonejongen, 514 U.S. 73, 80 (1995) ("In any event, the literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an amendment

---

(See Defs.' Reply, at 15.) The dispute is yet another indication to this Court that the instant action should not be resolved on summary judgment.

12

procedure, or in an identification procedure for that matter. The provision requires only that there <u>be</u> an amendment procedure, which here there is." (emphasis in original)). Accordingly, this Court rejects Defendants' argument that the PD/SPD is unenforceable.

C. <u>"Third Party"</u>

Finally, Defendants aver that—even if the PD/SPD qualifies as the plan document for the Northwell Plan—Northwell is not a "third party" that caused Lamis's injury under § 10. Defendants' offer two arguments to support their position. First, Defendants resurrect their earlier contention that Northwell and the Plan are the same entity. As such, Defendants claim that Northwell is an actual party—as opposed to a "third party"—to the PD/SPD. This Court rejects this argument for the same reason it rejected Defendants' earlier unclean hands argument: Defendants have not shown that Northwell and the Plan are the same entity. Second, Defendants point to the definition of "third party" under § 10 to argue that Northwell is a third party only in workers compensation cases.

As noted above, § 10 states that "if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury." (PD/SPD, at 88.) Section 10 outlines several categories of "third parties," including "a person or entity alleged to have caused you to suffer a Sickness, Injury or damages, or who is legally responsible for the Sickness, Injury or damages." (PD/SPD, at 88.) According to Defendants, however, Northwell cannot fall under this definition because § 10 also defines "third party" to include "[Northwell] in workers' compensation cases." (PD/SPD, at 88.) In light of that explicit reference to Northwell, Defendants claim that under the doctrine of "inclusio unius est exclusio alterius" (<u>i.e.</u>, to express or include one thing implies the exclusion of the other)

13

there is an "irrefutable inference" that Northwell is a "third party" under § 10 only in workers compensation cases. (Defs.' Mot., at 11.)

Courts "apply familiar rules of contract interpretation in reading an ERISA plan," Lifson v. INA Life Ins. Co. of N.Y., 333 F.3d 349, 353 (2d Cir. 2003) (per curiam), "looking to the language of the Plan and other indicia of the intent of the Plan's creator," Tirone v. N.Y. Stock Exch., Inc., 2007 WL 2164064, at *5 (S.D.N.Y. July 27, 2007) (quotation marks omitted). The Second Circuit "interpret[s] ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004) (quotation marks omitted). That said, in applying "rules of contract law to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous." Burke v. PriceWaterHouseCoopers LLP Term Disability Plan, 572 F.3d 76, 81 (2d Cir. 2009) (per curiam) (citation omitted).

"[C]ontract language is unambiguous when it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion." Am. Fed. of Musicians v. Atl. Recording Corp., 203 F. Supp. 3d 301, 306 (S.D.N.Y. 2016) (quotation marks omitted). By contrast, "[l]anguage in a plan is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." Critchlow, 378 F.3d at 256 (alteration in original) (quotation marks omitted). "The matter of whether the contract is ambiguous is a question of law for the court." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010). "Parties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993). Even if a contract is "ambiguous as to intent, summary judgment is still

proper when the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation." SCS Commc'ns Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004) (quotation marks omitted). And "if there is no extrinsic evidence bearing on the parties' intentions, proper interpretation of ambiguous contract language is an issue for the court." In re Coudert Bros., 487 B.R. 375, 390 (S.D.N.Y. 2013) (emphasis removed) (citing Mellon Bank, N.A. v. United Bank Corp. of N.Y., 31 F.3d 113, 116 (2d Cir. 1994)).

Here, both parties insist that the definition of "third party" in § 10 is unambiguous and that it supports their respective positions. However, this Court concludes that the PD/SPD supports Northwell's reading of § 10—that is, Northwell constitutes a "third party." First, there is no express limitation within § 10 cabining Northwell's third-party status to workers compensation cases. Second, Defendants' reading of § 10 is difficult to square with other, more expansive language used elsewhere within the section. For example, the definition of "third party" also includes "<u>any</u> insurer or other indemnifier of <u>any person or entity</u> alleged to have caused . . . the Sickness, Injury or damages." (PD/SPD, at 88 (emphasis added).) And "[a]n interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Tirone, 2007 WL 2164064, at *5 (quotation marks omitted). Moreover, even if Northwell were not a "third party" that caused Lamis's injury, Defendants have offered no explanation as to why, for example, Physicians' Reciprocal Insurers—which is a party to the State Action general release—is not a "third party" triggering Defendants' reimbursement obligations as an "insurer . . . of any person or entity alleged to have caused . . . the Sickness, Injury or damages." Defendants' argument concerning Northwell's third-party status therefore fails.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing this action is denied. The parties are directed to appear for a status conference on October 17, 2019 at 10:30 a.m.

Dated: September 25, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.